UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

GARDEN CITY BOXING CLUB, INC.,
as Broadcast Licensee of the
November 27, 2004 Barerra/Morales      REPORT AND
Program,                               RECOMMENDATION

                          Plaintiff,   CV 2005-3762 (CBA)(MDG)


            - against -

OSCAR ESPINAL, MIGUEL QUEZADA and
RAFAEL FERNANDEZ, Individually and as
officers, directors, shareholders
and/or principals of D-LITE SPORTS
INC. d/b/a DESTINY LOUNGE a/k/a
DESTINY, and D-LITE SPORTS INC. d/b/a
DESTINY LOUNGE a/k/a DESTINY,

                          Defendants.

- - - - - - - - - - - - - - - - - X

Go, United States Magistrate Judge:

     Plaintiff Garden City Boxing Club, Inc. ("plaintiff")

brought this action under Title 47 of the United States Code

alleging that individual defendants Oscar Espinal, Miguel Quezada

and Rafael Fernandez and corporate defendant D-Lite Sports Inc.

("D-Lite") (collectively referred to as "defendants") violated

sections 553 and 605 by intercepting and displaying to their

customers, without plaintiff's authorization, a pay-per-view

cable television broadcast.

     After entry of default following defendants' failure to

appear or otherwise defend in this action (ct. doc. 10), the

plaintiff's motion for default judgment was referred to me for a report and recommendation on damages and attorneys' fees.

## PERTINENT FACTS

The facts pertinent to determination of this motion are undisputed and are set forth in the complaint ("Compl.") (ct. doc. 1); the January 26, 2006 affidavit of Joseph Gagliardi, President of plaintiff ("Gagliardi Aff.") (ct. doc. 9-2); the January 26, 2006 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") (ct. doc. 9-3); and the December 2, 2004 affidavit of investigator Cosmo Lubrano ("Lubrano Aff.") (attached as Exhibit C to the Gagliardi Aff.). Defendants did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of California, with its principal place of business located in Campbell, California. Compl. at ¶ 5. Defendant D-Lite Sports Inc. is alleged to be a New York corporation which conducts business under the names Destiny Lounge and Destiny at 3302 Queens Boulevard, Long Island City, New York. Id. at ¶¶ 9, 10. Defendants Oscar Espinal, Miguel Quezada and Rafael Fernandez reside in the State of New York. Id. at ¶¶ 6-8.

Plaintiff owns the rights to distribute via closed-circuit television and encrypted satellite signal the Barrera/Morales boxing match, including all undercard bouts and the entire

television broadcast scheduled for November 27, 2004 (the "boxing match"). Id. at ¶ 14; Gagliardi Aff. at ¶ 3, Exh. A. Plaintiff entered into sublicense agreements with various entities to show the boxing match to their patrons. The broadcast originated as a satellite uplink and was retransmitted to cable and satellite providers via satellite signal. Compl. at ¶ 14.

Defendants did not contract with plaintiff, and thus, were not authorized to receive and publish the boxing match. Gagliardi Aff. at ¶ 6. As set forth in his affidavit, investigator Cosmo Lubrano observed the unauthorized public showing of the boxing match at Destiny to 50 customers. Lubrano Aff. at 2. Entering the establishment at approximately 1:00 a.m. on November 28, 2004, investigator Lubrano observed, inter alia, the post-fight commentary of the Barerra/Morales match. Id. at 1.

DISCUSSION

I. Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a

claim is based and caused injuries as alleged. <u>Greyhound</u>, 973
F.2d at 159. The movant need prove "only that the compensation
sought relate to the damages that naturally flow from the
injuries pleaded." <u>Id.</u>

The court must ensure that there is a reasonable basis for
the damages specified in a default judgment. Actual damages or
statutory damages may be assessed. In determining damages not
susceptible to simple mathematical calculation, Fed. R. Civ. P.
55(b)(2) gives a court the discretion to determine whether an
evidentiary hearing is necessary or whether to rely on detailed
affidavits or documentary evidence. <u>Action S.A. v. Marc Rich &
Co., Inc.</u>, 951 F.2d 504, 508 (2d Cir. 1991) (quoting <u>Fustok v.
ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)).
The moving party is entitled to all reasonable inferences from
the evidence it offers. <u>Au Bon Pain</u>, 653 F.2d at 65; <u>Directv,
Inc. v. Hamilton</u>, 215 F.R.D. 460, 462 (S.D.N.Y. 2003).

II. <u>Determination of Damages</u>

   A. <u>Liability</u>

Both sections 553 and 605 of Title 47 prohibit the
unauthorized reception of cable programming. Section 553(a)(1)
specifically applies only to cable transmissions and provides
that, "[n]o person shall intercept or receive or assist in
intercepting or receiving any communications service offered over
a cable system, unless specifically authorized to do so by a
cable operator or as may otherwise be specifically authorized by

-4-

law."  Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication ... or assist in receiving any interstate or foreign communication by radio and use such communication for his own benefit or the benefit of another not entitled thereto."

The Second Circuit in Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2d Cir. 1996) ("Sykes II"), held that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions.  See also Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002).  When certain television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605 apply.  Id.

Plaintiff's submissions establish that the corporate defendant violated sections 553 and 605 of Title 47 by intercepting and receiving the boxing match without authorization.  Compl. at ¶¶ 17-18; Lubrano Aff. at 1-2. Plaintiff had the right to distribute the boxing match, which originated via satellite uplink.  Compl. at ¶¶ 14-16; Gagliardi Aff. at ¶ 3, Exh. A.  Investigator Lubrano observed the boxing match being displayed to customers at Destiny, a business operated by defendant D-Lite, even though it had not contracted

with plaintiff to do so.  Lubrano Aff. at 1-2.  Consequently, this Court finds that defendant D-Lite's unlicensed reception and exhibition of the transmissions violated sections 553 and 605 of Title 47.

However, the liability of Oscar Espinal, Miguel Quezada and Rafael Fernandez, the individual defendants, involves different and additional considerations from the liability of the corporate owner of the bar.  There is no evidence or well-pled allegation establishing that the violations were committed by defendants Espinal, Quezada, or Fernandez, who have been sued individually and as officers, directors, shareholders and/or principals of D-Lite.  A party may be vicariously liable for infringement if he has "the right and ability to supervise" the infringing activities and had "an obvious and direct financial interest in the exploitation of [the] copyrighted materials" or contributorily liable if he "authorized" the infringing conduct. See Softel, Inc. v. Dragon Med. & Sci. Comm., Inc., 118 F.3d 955, 971 (2d Cir. 1997); Sygma Photo News, Inc. v. High Soc. Magazine, Inc., 778 F.2d 89, 92 (2d Cir. 1985) (persons "who participate in, exercise control over or benefit from the infringement, are jointly and severally liable as copyright infringers"); Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971).  There is simply no allegation in any of the submissions regarding defendants Espinal's, Quezada's, or Fernandez's conduct.  Nor has plaintiff provided any authority to

establish that liability for cable theft under title 47 may be imposed on corporate shareholders without proof of some participation. Merely naming these individuals in the caption of the complaint is insufficient to establish their liability. <u>See Dove v. Fordham University</u>, 56 F. Supp 2d 330, 335 (S.D.N.Y. 1999) ("where [a] complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted"); <u>see also Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 833 (2nd Cir. 1987). Thus, I recommend that no finding of liability be entered against Espinal, Quezada, or Fernandez.

B. <u>Damages</u>

Plaintiff requests damages pursuant to section 605, rather than section 553. Pl. Mem. at 6-8. Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553. <u>See Sykes II</u>, 75 F.3d at 127; <u>Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc.</u>, No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible).

Section 605 allows plaintiff to elect to recover either actual damages and lost profits, or statutory damages. <u>See</u> 47 U.S.C. § 605(e)(3)(C)(i). Section 605(e)(3)(C)(i)(II) authorizes

statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a). That section vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just." See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff"). In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." The court is authorized to award enhanced damages of up to $100,000 for each willful violation.

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy. See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative history). The court should therefore also grant damages in an amount which deters future piracy. See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover statutory damages in the amount of $4,000 and enhanced damages of $12,000 for defendants' willful

violation of section 605.[1]  Pl. Mem. at 6-7.  Some courts

presented with sufficient evidence indicating the number of

patrons present at the time of the unauthorized programming have

employed a formula that multiplies that number by a dollar

amount, usually based on the customary charge for the event in

question.  See, e.g., Mama Zee, 2002 WL 2022522, at *3 (awarding

$50 per patron), Time Warner Cable of New York City v. Googies

Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999)

(same); Time Warner Cable of New York City v. Taco Rapido Rest.,

988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same).  Other courts have

simply assessed a flat damages amount per violation.  See Joe

Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S.

Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000

statutory damages and $1,500 enhanced damages for one-time

exhibit of boxing match to about 20 customers); Garden City

Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS

7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000 statutory damages

and $5,000 enhanced damages for a one-time exhibit of boxing

match to 60 customers); Kingvision Pay-Per-View, Ltd. v. Jasper

Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) (awarding $5,000

statutory damages for a one-time exhibit of boxing match to 30

customers).

---

[1] Plaintiff's calculation is erroneously based on the
establishment having a capacity of 40 people.  See Pl. Mem. at 6.
Rather, plaintiff's investigator states that Destiny has a
capacity of 200 people.  See Lubrano Aff. at 2.

A number of judges in this district have awarded damages based on the number of patrons or the capacity of an establishment multiplied by the residential fee for a pay-per-view broadcast. See, e.g., Kingvision Pay-Per-View Ltd. v. Cazares, No. CV-05-2934, 2006 WL 2086031, at *3-*4 (E.D.N.Y. July 25, 2006) (adopting recommendation of statutory damages award based on $54.95 residential rate for each patron present during broadcast of event); Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037, 2005 WL 3018704, at *4 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damages award of $989.10 based on $54.95 for each of the 19 patrons observed in the establishment); Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on same $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity). Courts using the residential fee reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue. See Bello, 2005 WL 2496062, at *3. Plaintiff states that the residential rate for this broadcast was $54.95. Gagliardi Aff. at ¶ 10(B).

I recommend that damages be based on the number of customers in defendants' establishment, rather than total capacity, since the establishment was far from filled during the very short period of time the investigator was present. Thus, I recommend

-10-

awarding damages for 50 customers at the $54.95 residential rate or $2,747.50.

Further, I recommend that the Court award enhanced damages against defendant D-Lite. Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage. Am. Cablevision of Queens v. McGinn, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)). Since knowledge of infringement may be "actual" or "constructive," it need not be proven directly and can be inferred from the defendant's conduct. See Knitwaves, Inc. v. Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992). A defendant's default may also be considered as evidence of willful infringement. See Kenneth J. Lane, Inc. v. Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6 (S.D.N.Y. March 21, 2006); Peer Int'l Corp. v. Max Music & Ent'mt, No. 03 Civ. 0996, 2004 WL 1542253, at *3 (S.D.N.Y. July 9, 2004); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages. These factors include: "repeated violations over an extended period of

time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

The undisputed facts presented by plaintiff in its complaint and the supporting affidavits clearly establish that Destiny is a commercial establishment that publicly displayed the Barrera/Morales boxing match to customers without authorization. Gagliardi Aff. at ¶¶ 6-8; Lubrano Aff. at 1-2. Significantly, defendant even exhibited a poster outside Destiny advertising that the match would be shown there and that customers must spend a minimum of $30 on food and drinks. See photograph attached to Lubrano Aff. Plaintiff's submissions support the inference that on November 27 and 28, 2004, Destiny displayed the boxing match for commercial gain in order to attract customers to patronize defendant's bar. Thus, I find that defendant willfully acted to intercept the match without authorization. Some courts have awarded enhanced damages equal to three times the amount of damages awarded under section 605(e)(3)(C)(i). See Kingvision Pay-Per-View, Ltd. v. Echeverria, No. 06 CV 1266, 2007 WL 595025, at *4 (E.D.N.Y. Feb. 22, 2007); Joe Hand Promotions, Inc. v. West, No. CIV.A.99-0983E(M), 2000 WL 1610666, at *2 (W.D.N.Y. Oct. 25, 2000) (where no special circumstances are shown, a

trebling of damages is a "reasonable deterrent against future violations") (quoting Googies Luncheonette, 77 F. Supp. 2d at 490-91). However, several factors warrant a higher award: defendant D-Lite advertised the event; customers viewing the match were subject to a $30 minimum charge; and the 50 patrons investigator Lubrano observed may not accurately reflect the actual number of patrons at Destiny during the match since he entered Destiny after the match had ended. Thus, I recommend enhanced damages of $10,000.

     C.   Injunctive Relief

Plaintiff also seeks permanent injunctive relief against defendants pursuant to 47 U.S.C. § 605(e)(3)(B)(i). See Pl. Mem. at 8-9. "A court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" Dunkin' Donuts Inc. v. Peter Romanofsky, Inc., No. CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting King v. Nelco Indus., Inc., No. 96-CV-4177, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996)). Under both section 553(c)(2)(A) and section 605(e)(3)(B)(i), a court may grant an injunction as necessary to prevent further violations of either section.

Even where injunctive relief is available under the applicable statute, the party seeking an injunction must

-13-

demonstrate irreparable harm and the threat of a continuing violation. N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43 (2d Cir. 1999); Barrera v. Brooklyn Music, Ltd., 346 F. Supp. 2d 400, 412-13 (S.D.N.Y. 2004); Boisson v. Banian Ltd., 280 F. Supp. 2d 10, 15 (E.D.N.Y. 2003). And, in any event, equitable remedies are discretionary. See Tennessee Valley Auth. v. Hill, 437 U.S. 153, 193 (1978). Here, plaintiff has shown only a single violation of the statute and has not established that the monetary damages recommended above will be insufficient to deter future violations. Moreover, the theft of plaintiff's broadcast in this action may be a factor considered by a court in awarding damages in any future action against defendants. Accordingly, I recommend denying plaintiff's request for a permanent injunction.

D.   Attorneys' Fees

Plaintiff seeks to recover its attorneys' fees and costs totaling $2,349.00. Compl. at ¶¶ 23, 29, 35; Lonstein Aff. at ¶ 2. Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party. Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) ("Sykes I"). The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar. Hensley v. Eckerhart, 461 U.S. 424, 433, 1940 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n, 493 F.3d 110, 117-18 (2d Cir. 2007);

<u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1058-59 (2d Cir. 1989).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. <u>See</u> <u>Lunday v. City of Albany</u>, 42 F.3d 131, 133 (2d Cir. 1994); <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the lodestar calculation. <u>See</u> <u>Hensley</u>, 461 U.S. at 434; <u>Lunday</u>, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

The reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." <u>Cruz v. Local Union No. 3 of IBEW</u>, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 894 (1984)). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates

charged in the community. <u>Chambless</u>, 885 F.2d at 1059. The "community" is generally considered the district where the district court sits. <u>See</u> <u>Arbor Hill</u>, 493 F.3d at 118. The Court in <u>Rotella</u> found that "the prevalent market rate in this district is in the range of $200 to $250 for partners and between $100 and $200 for junior and senior associates." <u>Rotella v. Bd. of Educ.</u> <u>of City of New York</u>, No. 01 CIV. 0434, 2002 WL 59106, at *2-3 (E.D.N.Y. Jan. 17, 2002) (citations omitted) (finding that rate of lead counsel in a small firm of $225 per hour and rates of $135 and $100 per hour for junior counsel were reasonable); <u>see</u> <u>also</u> <u>SEC v. Goren</u>, 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003).

Plaintiff seeks to recover $1,349.00 in attorneys' fees. Lonstein Aff. at ¶¶ 3-4. In support of that request, plaintiff has submitted an affidavit from Julie Cohen Lonstein detailing the work done, hours expended, and the total amount due. <u>Id.</u> Ms. Lonstein states that attorney work totaled 5.62 hours at a rate of $200 per hour, totaling $1,124.00, and 3 hours of paralegal time was expended at a rate of $75 per hour, totaling $225.00. <u>Id.</u>

Although the rate sought by plaintiff for attorney time <u>may</u> be reasonable, plaintiff fails to provide any information identifying the attorneys who worked on this matter and the experience of the attorneys. If the work is performed by an associate with only a few years of experience, then I would find the $200 per hour rate unreasonable based on my knowledge of

prevailing rates for such matters in this district.  See Rotella,

2002 WL 59106, at *2-*3; see also Googies Luncheonette, Inc., 77

F. Supp. 2d at 491.  Because plaintiff failed to provide

sufficient information to support the rates claimed, I recommend

that plaintiff be awarded fees for its attorneys' time at a rate

of $175 per hour.

Furthermore, although the amount of time claimed by

plaintiff is not substantial, this Court questions the accuracy

of the number of hours claimed.  For example, plaintiff's counsel

seeks compensation for 1.5 hours of work in drafting the

complaint, the exact amount of time that plaintiff's counsel has

claimed in a large number of cases brought for the theft of

programming, as observed by a number of my colleagues.  Between

August 2, 2005 and September 30, 2005, plaintiff filed at least

23 actions in this district against various commercial

establishments for unauthorized display of the Barrera/Morales

boxing match.[2]  After the defendants defaulted in 17 of those

cases, plaintiff's counsel claimed compensation for 1.5 hours for

drafting the complaint.[3]  Other portions of plaintiff's

submissions were virtually identical.  See Kingvision

---

[2] See CV05-3680; CV05-3685; CV05-3687; CV05-3689; CV05-3691;
CV05-3692; CV05-3693; CV05-3698; CV05-3705; CV05-3706; CV05-3707;
CV05-3708; CV05-3709; CV05-3710; CV05-3711; CV05-3712; CV05-3713;
CV05-3714; CV05-3762; CV05-3897; CV05-3898; CV05-4119; CV05-4654.

[3] See CV05-3685; CV05-3687; CV05-3691; CV05-3692; CV05-3693;
CV05-3698; CV05-3705; CV05-3706; CV05-3708; CV05-3709; CV05-3710;
CV05-3713; CV05-3714; CV05-3762; CV05-3897; CV05-3898; CV05-4119.

<u>Pay-Per-View, Ltd. v. Batista</u>, No. CV-05-0614, 2005 WL 2999427, at *1, *6-*7 (E.D.N.Y. October 6, 2005). Plaintiff also claimed in every motion for default, attorney time of 0.25 of an hour for review of the proof of service and paralegal time of 0.5 hour for filing the proof of service. <u>See</u> <u>supra</u> note 3, at 17. Such time, while not substantial, is too much for the work involved, particularly since plaintiff frequently filed proofs of service in a number of cases on the same day. For example, the docket sheets indicate that on September 6, 2005, plaintiff filed proofs of service in at least five cases (CV05-3689, CV05-3687, CV05-3692, CV05-3698 and CV05-3710). While this Court appreciates the difficulty plaintiff may have in enforcing its licensing rights against the widespread theft of programming and its desire to do so economically, the plaintiff has failed to meet its burden of providing sufficiently detailed and accurate records. <u>See</u> <u>New York State Ass'n for Retarded Children, Inc.</u>, 711 F.2d at 1147-48.

Given my concerns in this and other cases brought by plaintiff's counsel regarding the accuracy of time claimed, I recommend that plaintiff's request for fees based on its attorneys' time be reduced by 20%. <u>See</u> <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 117 (2d Cir. 1997) (permitting courts to make an across-the-board reduction in the amount of hours for unreasonable hours claims). Accordingly, I recommend that plaintiff be awarded fees for 4.5 hours of its attorneys' time at

a rate of $175 per hour and 3 hours of its paralegals' time at a
rate of $75 per hour, for a total fee award of $1,012.50.

Pursuant to section 605(e)(3)(B)(iii), plaintiff also seeks
$1,000 in costs. In support of that request, plaintiff has
submitted an affidavit from Ms. Lonstein, attesting to the
payment of $350 to the investigator for his services. Lonstein
Aff. at ¶ 3. Courts are divided on the question whether a
plaintiff may be entitled to recover costs incurred for the
investigator, but I recommend that this Court follow the courts
that have found an investigator to be clearly "incidental and
necessary" to the prosecution of these types of cases. See Amato
v. City of Saratoga Springs, 991 F. Supp. 62, 68 (N.D.N.Y. 1998)
(citing Northcross v. Bd. of Educ., 611 F.2d 624, 639 (6th Cir.
1979)); see also Kingvision Pay-Per-View, Ltd. v. Autar, 426 F.
Supp. 2d 59, 65-67 (E.D.N.Y. 2006); Rolex Watch U.S.A., Inc. v.
Brown, No. 01 CIV. 9155, 2002 WL 1226863, at *4 (S.D.N.Y. June 5,
2002) (awarding investigative fees in trademark infringement
action); Int'l Cablevision, Inc. v. Noel, 982 F. Supp. 904, 918
(W.D.N.Y. 1997) (acknowledging investigative fees recoverable as
a cost under § 605); Video Aided Instruction, Inc. v. Y & S
Express, Inc., No. 96 CV 518, 1996 WL 711513, at *6 (E.D.N.Y.
Oct. 29, 1996) (awarding fees); Maywalt v. Parker & Parsley
Petroleum Co., 864 F. Supp. 1422, 1439 (S.D.N.Y. 1994) (approving
$75 rate for investigators as within "the reasonable range of
rates" paid in the district); but see Cazares, 2006 WL 2086031,

-19-

at *6.

However, since the investigator arrived at the defendant's premises at 1:00 a.m. and left at 1:02 a.m., I find $350 in investigative fees to be excessive and recommend that this Court award only $100 in investigative costs. Although the investigator's invoice indicates that plaintiff was charged $350 for investigative fees, there is no evidence as to the investigator's hourly rate or how the amount charged was calculated. The amount awarded of $100 is generous considering the work required in this case. Moreover, based on this Court's knowledge from other cases and from conferring with colleagues, investigators hired by plaintiff (as well as other licensors of rights to certain programming broadcast via satellite) visit a number of places during the night that a particular boxing match is broadcast. See Garden City Boxing Club, Inc. v. Rojas, CV 2005-1047 (DGT) (MDG), 2006 WL 3388654, at *8 (E.D.N.Y. Nov. 21, 2006). For example, plaintiff presented affidavits from investigator Cosmo Lubrano in five other cases concerning the Barrera/Morales boxing match. See CV05-3705; CV05-3706; CV05-3710; CV05-3714; and CV05-3897. Plaintiff nonetheless sought $350 for investigative fees in four of these actions and $450 in one action. Thus, I find the $350 in investigative fees sought by plaintiff to be excessive and recommend that this Court award only $100 in investigative costs.

In addition, plaintiff seeks reimbursement for filing fees

of $250 and service of process fees in the amount of $400.
Lonstein Aff. at ¶ 3.  Plaintiff's request for filing fees and
service of process fees is reasonable, except that plaintiff
should not recover the $300 fee for serving the individual
defendants since I recommend that no judgment be entered against
them.

Thus, I recommend that the Court award costs of $250 for the
Court's filing fee, $100 for service of process fees on the
corporate defendant and $100 for investigative fees, for a total
of $450 in costs.

CONCLUSION

For the foregoing reasons, I respectfully recommend that
this Court award plaintiff $2,747.50 in statutory damages,
$10,000.00 in enhanced damages, $1,012.50 in attorneys' fees and
$450 in costs, for a total judgment of $14,210.00 against
defendant D-Lite Sports Inc.  Further, I recommend that no
judgment be granted against defendants Espinal, Quezada and
Fernandez.

A copy of this report and recommendation is being filed
electronically on this date and sent to defendants by mail.  Any
objections must be filed with the Clerk of the Court, with a copy
to the Honorable Carol B. Amon, the undersigned and the other
party, on or before February 13, 2008.  Failure to file timely
objections may waive the right to appeal the District Court's

Order.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; <u>Small v.</u>
<u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

Dated:    Brooklyn, New York
          January 24, 2008

                                    ___/s/_____
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE